IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARGARET MITCHELL (AKA ANOTHER JANE DOE), | § § § | |
| PLAINTIFF, | § § § | |
| v. | § § | CIVIL ACTION NO. 4:20-CV-00142 |
| COMMUNITY HEALTH CHOICE TEXAS, INC.; NAVITUS HEALTH SOLUTIONS, LLC; THE CITY OF HOUSTON; HARRIS COUNTY; THE HARRIS COUNTY HOSPITAL DISTRICT dba HARRIS HEALTH SYSTEMS; and THE HARRIS CENTER FOR MENTAL HEALTH, | § § § § § § § § § § § § | |
| DEFENDANTS. | § § | |

**HARRIS COUNTY HOSPITAL DISTRICT DBA HARRIS HEALTH SYSTEM'S
MOTION TO DISMISS MITCHELL'S FIRST AMENDED COMPLAINT**

Defendant Harris County Hospital District dba Harris Health System ("Harris Health") files this motion to dismiss (the "Motion") the First Amended Complaint (the "Complaint") filed by Plaintiff Margaret Mitchell aka Another Jane Doe ("Mitchell") and would respectfully show the following:

### I. SUMMARY OF ARGUMENT

1.      Mitchell's Complaint is not a model of clarity, but with regard to Harris Health her factual allegations are limited:  she was taken to the Ben Taub Emergency Center ("BTEC"), evaluated, released, and later sent a medical bill.  In her view, this interaction gave rise to a slew of constitutional and statutory violations and incidents of medical malpractice.

2.      However, each claim Mitchell asserts suffers from serious deficiencies that preclude her from stating any valid claim against Harris Health.

1

3. On the procedural side, Mitchell has not properly served Harris Health and not obtained leave of court to file the Complaint.

4. With respect to jurisdiction, Harris Health has governmental immunity for its alleged statutory violations. Mitchell also lacks standing to seek any of the injunctive relief she requests.

5. On the merits, her § 1983 claims based on violations of the Fourth or Fourteenth Amendment (whether regarding conditions of confinement, excessive force, or deliberate indifference) fail because she does not plead any policy or practice of Harris Health that gave rise to such violations.

6. Any § 1983 claim based on failure to provide adequate medical care necessarily fails because Mitchell does not have a constitutional right to medical care.

7. Her § 1983 claim based on violations of the Sixth Amendment is meritless because she was never criminally charged.

8. To the extent she claims that Harris Health was part of a conspiracy to violate her constitutional rights under § 1983, she simply fails to plead any facts in support of that claim.

9. She also does not state a viable ADA or Rehabilitation Act claim against Harris Health. While she pleads she was a qualified individual, she does not plead any facts suggesting that she was denied services or that such denial was due to her disabilities.

10. Finally, any claims related to her "illegal bill" must fail. HIPAA provides no private right of action, HIPAA and Chapter 611 do not prohibit Harris Health's actions, Chapter 181 likewise does not provide a private right of action, and § 571.018 simply does not apply to this case.

11. For these reasons, Mitchell's Complaint should be dismissed.

## II. PROCEDURAL HISTORY

12.     Mitchell filed her original petition in state court on December 11, 2019, naming Community Health Choice Texas, Inc. ("CHC"), Navitus Health Solutions, LLC, and Clint Doe as defendants.  ECF No. 1, Ex. A.  CHC removed the case to federal court on January 15, 2020. ECF No. 1.

13.     On or about December 12, 2020, Mitchell personally mailed a letter containing a copy of the Complaint and a summons to Harris Health.  Harris Health received her letter on December 14, 2020.

14.     Mitchell did not obtain leave of court or consent before filing the Complaint.

## III. FACTS

15.     For the purposes of this Motion only, the Court must take the factual allegations (though not any legal conclusions couched as factual allegations) in the Complaint as true. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Christiana Tr. v. Riddle*, 911 F.3d 799, 802 (5th Cir. 2018).

16.     Given the breadth and length of the Complaint, this Motion recounts only facts relevant to Mitchell's claims against Harris Health.

### A.      Transfer for Medical Reasons to the BTEC.

17.     After arriving at the Harris Center, Mitchell was told that she was too sick to stay. Complaint at ¶ 65.  An HPD officer then transported her to the Ben Taub Emergency Center ("BTEC")[1].  *Id.*  Her medical records from BTEC contain "scant incidental mentions of her transport, but not in the form prescribed by law." *Id.*

---

[1] The BTEC is part of Ben Taub Hospital, which is owned and operated by Harris Health.  Complaint at ¶ 21.

18.　　Using HPD to transport her was, in some way, part of a "convenient cost cutting stratagem" to avoid unspecified expenses imposed by EMTALA. Complaint at ¶ 68. Once at the BTEC, she was deliberately misdiagnosed to avoid revealing the aforementioned conspiracy to avoid EMTALA transport costs. *Id.* at ¶ 70. Unidentified physicians responsible for performing a mental-health examination[2] were part of this conspiracy, which rendered their medical opinions "legally incompetent." *Id.*

**B.　　Treatment at the BTEC.**

19.　　Immediately upon arriving at the BTEC, she was put on a blood-pressure monitor and monitored continuously. Complaint at ¶ 79. At one point, the monitor read "238" and "160," indicating that she was in a "hypertensive crisis" and could have died. *Id.* However, she was not told what the reading meant, the reading was never discussed, and she was offered no treatment. *Id.* Despite this, she also says that BTEC "prudently monitored" her blood pressure. *Id.* at ¶ 84. Her hypertensive crisis was never noted in her medical records. *Id.* at ¶ 79. That fact, combined with the fact that someone at the BTEC said that she arrived from a "non-medical source of origin," "traumatized her." *Id.*

20.　　She continually asked to have her handcuffs removed, stating that they hurt. Complaint at ¶ 80. Meanwhile, another detainee was not restrained. *Id.* A BTEC staff member who was monitoring her vitals said that this difference in treatment "was because the law enforcement agency had different detention policies than HPD and that the [BTEC] had to allow HPD to follow their policies during her detention." *Id.*

21.　　Mitchell claims that she was "admitted" and that at the time of her admittance to the BTEC her blood pressure was 176 over 70. Complaint at ¶ 80. She asked for information

---

[2] Within 12 hours of presentation to a facility under a peace officer's warrantless detention, a physician must preliminarily examine a person to confirm whether they meet the requirements for emergency admission. TEX. HEALTH & SAFETY CODE §§ 573.021(c) & 573.022(a).

about her vitals before her "admittance" but was told there were not available.  *Id.*  She claims

this was because the BTEC did not choose to "admit" her until her blood-pressure reading was at

a level that was "no longer considered life threatening."  *Id.* at 84.

22.     Upon her "admittance," no one informed her of her legal rights, including, among

others, her rights to see a judge and obtain counsel.  Complaint at ¶ 81.  She was given "no

paperwork of any type" and provided no information about her insurance company.  *Id.*  Also,

she was never told that Harris Health could bill her or her insurance company and was never told

about her HIPAA rights.  *Id.*  Ultimately, she refused "invasive medical testing procedures as

part of her examination," and her purse and phone were taken from her and searched.  Complaint

at ¶ 81.

### C.     Release from the BTEC.

23.     While she says she was admitted to the BTEC, she also avers that "it did not take

long for the physician and BTEC medical personal [sic] to determine [Mitchell] did not meet the

criteria for commitment,[3] and she was released."  Complaint at ¶ 83.  However, BTEC failed to

provider her transportation back home, though it did call her a cab.  *Id.*

### D.     Insurance Bill.

24.     Within ten days of being released, she received a bill for $1,275.00.  Complaint at

¶ 86.  Her insurance paid $762.90, while she was personally responsible for rest.  *Id.*  This bill

was improper because she had not been told about any bill when she was detained.  *Id.*  Also, by

submitting the bill to her insurer, CHC, Harris Health took "sensitive mental health PHI" and

gave it to CHC, where it become a permanent part of her private insurance record.  *Id.* at ¶ 90.

Harris Health later sent her a letter explaining that it has a provider services agreement with CHC

---

[3] Despite Mitchell's allegation, "commitment" is not the same thing as "emergency detention."  The former is governed by Chapter 574, the latter by Chapter 573.

that allowed Harris Health to bill CHC for emergency services provided to her.  Complaint at ¶ 91.

### E.     Relief Sought.

25.     Mitchell asserts that her "personal injury damages are indivisible and that all Defendants are jointly and severally liable" for them.  Complaint at 54.  She asks for $50,000 for injuries to her hand, wrist, and arm, $100,000 for "Pain and Mental anguish for the deprivation of her Civil Right [sic]"; $50,000 for "the value of her lost time in investigating this matter," and $800 for a new iPhone.  *Id.*

26.     She also asks for injunctive relief.  First, she asks that Harris Health be enjoined from charging "mental health detainees for involuntary services that are memorialized in a bill of costs prepared by the clerk of the probate court."  Complaint at 55.  Second, she asks that Harris Health be required to comply with various legal standards set forth in the U.S. Constitution, Title 42 of the Code of Federal Regulations, and in the Texas Health and Safety Code.  *Id.* at 54–58.

## IV. LEGAL STANDARDS

27.     **Rule 12(b)(1)**.  "Under FRCP 12(b)(1), a party may challenge the subject matter jurisdiction of the court to hear a case."  *Walker v. Beaumont ISD*, 938 F.3d 724, 734 (5th Cir. 2019).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."  *Ramming v. United States*, 281 F.3d 158, 161 (per curiam).  "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Walker*, 938 F.3d at 734.

28.     When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the 12(b)(1) jurisdictional attack first. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209 (5th Cir. 2010) (citing *Ramming*, 281 F.3d at 161).

29.     **Rule 12(b)(5)**. Rule 12(b)(5) allows a party to move to dismiss for insufficient service of process. The party making service bears the burden of demonstrating valid service of process once an objection is raised. *See Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992).

30.     **Rule 12(b)(6)**. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows a party to seek dismissal of a claim for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6).

31.     A complaint must set forth facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). These "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

32.     Mere "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "an unadorned, the-defendant-unlawfully-harmed-me accusation" will not do. *Id.*; *Iqbal*, 556 U.S. at 678. Further, courts do not accept as true "'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

33.     "Determining whether the plausibility standard has been met is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679).

## V. ARGUMENT

### A.     Mitchell Cannot Overcome Harris Health's Governmental Immunity (12(b)(1)).

34.     "Sovereign immunity deprives the court of subject matter jurisdiction." *Walker*, 938 F.3d at 734.  Harris Health is a unit of local government of the State of Texas established for the governmental functions of providing medical and hospital care to the indigent or needy inhabitants of Harris County.  TEX. CONST. art. IX § 4; TEX. HEALTH & SAFETY CODE § 281.002. As such, Harris Health enjoys sovereign immunity[4] from common-law tort liability.  *See Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838 (Tex. 2009).

35.     "The Texas Tort Claims Act provides a limited waiver of immunity for certain suits against governmental entities . . . ."  *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) (citing TEX. CIV. PRAC. & REM. CODE § 101.023).

36.     The TTCA waives sovereign immunity only for claims for personal injury or death that are proximately caused by a condition or use of tangible personal or real property.  *See* TEX. CIV. PRAC. REM. CODE § 101.021(2).  This waiver does not encompass violations of the Texas Mental Health Code.  *Beaumont State Ctr. v. Kozlowski ex rel. Allen*, 108 S.W.3d 899, 900 (Tex. 2003) (holding that immunity was not waived for a claim based on violations of the

---

[4] The immunity to which Harris Health is entitled is technically "governmental immunity," which "protects political subdivisions of the State." *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694, n.3 (Tex. 2003).  This distinction does not affect the analysis of Harris Health's immunity from Mitchell's claims. *See Tex. Transp. Comm'n v. City of Jersey Village*, 478 S.W.3d 869, 882 (Tex. App. 2015―Houston [14th Dist.], 2015, pet. denied).

Texas Mental Health Code brought pursuant to Texas Health & Safety Code § 321.003[5]). It also does not encompass lapses in medical documentation, failures to monitor, failure to use acceptable practices, or failures to disclose risks. *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 176 (Tex. 1994) (no waiver for medical documentation lapses); *Univ. of Texas M.D. Anderson Cancer Ctr. v. King*, 329 S.W.3d 876, 880–81 (Tex. App.—Houston [14th Dist.], 2010, pet. denied) (no waiver of immunity for allegations of failure to act or to use property, failure to supervise, failure to investigate, failure to monitor, failure to address risk and use of medication); *Univ. of Tex. Med. Branch at Galveston v. Simmons*, No. 14-11-00215-CV, 2012 WL 19665 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (no waiver of immunity for allegations of failure to train, failure to develop proper procedures, failure to follow proper procedures and policies). "There is no waiver of immunity under the 'tangible personal property' provision of the [TTCA] for injuries proximately caused by the negligent failure to act." *Univ. of Texas at Brownsville v. Ramos*, No. 13-11-00302-CV, 2012 WL 256137, at *7 (Tex. App.—Corpus Christi Jan. 26, 2012, pet. denied).

37.    Here, Mitchell appears to bring claims against Harris Health for failing to follow the Texas Mental Health Code. TEX. HEALTH & SAFETY CODE §§ 571.001–578.008.[6]  However, the TTCA does not waive sovereign immunity for any such claims. *See Beaumont State Ctr.*, 108 S.W.3d at 900.

---

[5] Section 321.003 provides a private right of action for violations of the Texas Mental Health Code.
[6] *See, e.g.*, ¶ 60 ("She was told at . . . BTEC, that she had no right to see a judge."); ¶ 81 ("When Plaintiff was 'admitted' to the BTEC, again no one informed her of her rights, including the minimal disclosures mandated by statute."); ¶ 83 (alleging that Harris Health personnel "failed to provide her transport home," citing § 573.034(c)); & ¶ 88–91 (discussing how Harris Health allegedly violating § 571.018 regarding her medical bill).

9

38.     Immunity also bars any claims that Mitchell brings under other provisions of the Health and Safety Code.[7]  For example, failure to use medical records in a particular way does not waive immunity for a claim under Health & Safety Code § 611.005.  *See Sorrow v. Harris Cty.*, No. 14-15-00571-CV, 2016 WL 4445037, at *3 (Tex. App.—Houston [14th Dist.] Aug. 23, 2016, pet. denied).  Any other Health and Safety Code claims must fail because they suffer from similar, overarching problems.  She does not plead any personal injuries resulting from these violations and never alleges use of tangible property as opposed to the use of intangible information or a failure to act.  For instance, any failure to include information in Mitchell's medical record involved the use of intangible information, not tangible personal property.  *See Univ. of Tex. Med. Branch at Galveston*, 871 S.W.2d at 176.  The same is true with respect to any claim that Harris Health failed to transport her properly.  *See* TEXAS HEALTH & SAFETY CODE § 241.056.

39.     For these reasons, Mitchell cannot overcome Harris Health's sovereign immunity with respect to her claims of statutory violations.[8]

### B.     Mitchell Lacks Standing to Obtain Injunctive Relief (12(b)(1)).

40.     "[T]he requirement that a claimant have 'standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'"  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Standing requires three elements:  (1) an injury-in-fact that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the injury and the defendant's actions;

---

[7] *See, e.g.*, ¶ 80 n.67 (§ 241); ¶ 81 n.68 (§ 321); ¶ 86 n.73 (§ 311); & ¶ 90 (§§ 181 & 611); and ¶ 90 nn. 83 & 84 (§§ 181 & 511).

[8] Sovereign immunity also bars any healthcare liability or other tort claims that Mitchell might be bringing against Harris Health.  *See* TEX. CIV. PRAC. & REM. CODE §§ 74.001 & 101.057.

and (3) that the injury will likely be redressed by a favorable decision. *See, e.g.*, *Bennett v. Spear*, 520 U.S. 154, 167 (1997); *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).

41.     To obtain injunctive relief, a plaintiff must be "likely to suffer future injury." *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief[.]"  *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974).  The threat of future injury to the plaintiff "must be both real and immediate, not conjectural or hypothetical."  *Lyons*, 461 U.S. at 102 (internal quotation marks and citations omitted).

42.     Mitchell does not identity the claims for which she is seeking injunctive relief as opposed to damages for past harm.  Regardless, Mitchell lacks standing to seek prospective injunctive relief under any theories of liability in the Complaint.  The reason is simple: she does not plead that she is likely to suffer future injury.

43.     She asserts that she is not suicidal, does not have a mental illness, and should never have been emergently detained.  *See, e.g.*, Complaint at ¶¶ 52–54.  This makes any future injury arising from emergency detention related to her mental illness entirely hypothetical.

44.     The hypothetical nature of any future injury is compounded in light of the limited allegations that Mitchell makes against Harris Health.  If she is emergently detained in the future, it is entirely unknown whether she will be sent to Ben Taub, how she will be sent there, how long she will stay, what communications she will receive from staff, what care or evaluation she will receive, or whether she will receive a bill.

45.     The bare possibility that she could be emergently detained and could be sent to a Harris Health facility does not afford Mitchell standing to seek any injunctive relief against Harris Health.

**C.      Mitchell Has Not Properly Served Harris Health (12(b)(5)).**

46.      Rule 4(c)(2) states that service can be accomplished by "any person who is at least 18 years old and ***not a party*** may serve a summons and complaint" (emphasis added). Mitchell tried to serve Harris Health by personally mailing copies of the summons and complaint to Harris Health's Chief Executive Officer.  This is improper because Mitchell is a party and therefore cannot personally mail service to Harris Health.

**D.      Mitchell Does Not State any Viable § 1983 Claims (12(b)(6)).**

i.      Mitchell Does Not Plead a Policy or Custom of Harris Health Related to Her Handcuffing.

47.      Section 1983 provides a private right of action against a person (including local government units) acting under the color of state law to redress the deprivation of rights, privileges, and immunities secured by the U.S. Constitution or federal law.  *See, e.g.*, 42 U.S.C. § 1983; *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017); *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978); *see also City of Dallas v. Saucedo-Falls*, 268 S.W.3d 653, 658 (Tex. App.—Dallas 2008, pet. denied).  It is not a source of substantive rights but a remedial statute designed to vindicate federal rights conferred elsewhere.  *See, e.g.*, *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *see also Wilkinson v. Dallas/Ft. Worth Int'l Airport Bd.*, 54 S.W.3d 1, 20 (Tex. App.—Dallas 2001, pet. denied).

48.      There are two elements to a § 1983 action: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived a person of rights secured by the Constitution or the laws of the United States.  *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004).

49.      To satisfy the first prong of a § 1983 claim against a hospital district, a plaintiff must show that "the District had a policy or custom that caused [a] constitutional deprivation."

12

*Okon v. Harris Cty. Hosp. Dist.*, 426 F. App'x 312, 316 (5th Cir. 2011). "This means that to succeed on her claim . . . , [a plaintiff] must (a) identify a policymaker, (b) identify an official policy or custom, and (c) demonstrate that the official policy or custom was a moving force behind the violation of her constitutional rights." *Wade v. Montgomery Cty., Tex.*, No. 4:17-CV-1040, 2019 WL 5653878, at *3 (S.D. Tex. Sept. 30, 2019) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

50.     Mitchell says being handcuffed at the BTEC violated her Fourth Amendment right to be free of excessive force.[9]  But throughout the Complaint, she makes clear that the decision whether to handcuff her—and any policy or custom relating to handcuffing—was HPD's, not Harris Health's.  *See, e.g.*, Complaint at ¶ 56 ("Following the City of Houston's official policy, the officer shackled her. . . . [the officer's] superiors directed him to shackler her."); ¶ 58 ("The officer chained her to a bed and then left for over two hours."); & ¶ 59 (citing HPD Transportation Policy).  She even mentions that another patient was not handcuffed because "the law enforcement agency had different detention policies than HPD and that the hospital [i.e., Ben Taub] had to allow HPD to follow their policies during her detention."  *Id.* at ¶ 80.  Thus, Mitchell affirmatively pleads that it was HPD's policy or custom—not Harris Health's—that caused her injuries.

51.     Furthermore, the Fifth Circuit has held that one incident does not show a policy or custom.  *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753–54 (5th Cir. 2009); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002).  Mitchell's

---

[9] Mitchell suggests that her handcuffing may have been an unconstitutional condition of confinement under the Fourteenth Amendment.  *See* Complaint at ¶ 77.  The argument in this section applies with equal force to any Fourteenth Amendment claims Mitchell may be asserting about being handcuffed.  It also applies to any argument Mitchell may make to support injunctive relief under 42 C.F.R. § 485.910(e), which regulates restraint and seclusion.

Complaint relates only to one incident—*her* emergency detention.  In fact, the only time Mitchell mentions other individuals is when she notes that another detainee was "not handcuffed."  *Id.* at ¶ 80.  This falls well short of pleading any policy or custom.

ii. Mitchell Does Not Plead a Policy or Custom of Harris Health Related to Her Emergency Detention More Broadly.

52. Similarly, Mitchell cannot state a claim against Harris Health on the basis that her emergency detention itself was unconstitutional for lacking probable cause.  *See* Complaint at ¶ 52.  HPD, not Harris Health, emergently detained her, and the Complaint does not plead a Harris Health policy or custom of emergently detaining individuals without probable cause.  In any event, courts have held that threatening suicide provides probable cause sufficient to vitiate any constitutional concerns with emergency detention under Chapter 573.  *See Lupi v. Diven*, No. 1:20-CV-207-RP, 2020 WL 6324396, at *8 (W.D. Tex. Oct. 27, 2020) (collecting cases, including *Martinez v. Smith*, 200 F.3d 816, 1999 WL 1095667, at *1–2 (5th Cir. Nov. 4, 1999), which found probable cause to detain an individual who had told an acquaintance she was suicidal).

iii. Mitchell Cannot State a § 1983 Claim for Medical Malpractice or Negligence.

53. Mitchell also suggests that the failure of the BTEC's medical staff to alert her of her "hypertensive crisis" amounted to "deliberate indifference" under the Due Process Clause of the Fourteenth Amendment.  Complaint at ¶ 79.  However, § 1983 imposes liability for violation of rights protected by the Constitution, not for violations of duties arising out of tort law. *Baker v. McCollan*, 443 U.S. 137, 146 (1979). Medical negligence, malpractice, or unsuccessful medical treatment do not "give rise to a § 1983 cause of action." *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (per curiam) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.

1985)).  Therefore, Mitchell cannot state a § 1983 claim against Harris Health based on the quality of her medical care or the failure to provide such care.

iv.     Mitchell Cannot State a § 1983 Claim for Violations of Medicare Regulations.

54.     Mitchell seeks an injunction requiring that Harris Health comply with 42 C.F.R. §§ 482.24 & 485.910(e), presumably under § 1983.  Those regulations impose "conditions of participation" on hospitals that received funding from the Medicare program.  *See* 42 C.F.R. § 482.1(a).  However, "federal funding provisions provide no basis for private enforcement by § 1983." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 274 (2002).  Claims, like Mitchell's, based on these provisions are frivolous. *Lorah v. Christiana Care Hosp.*, No. 16-1018-LPS, 2017 WL 3396448, at *3 (D. Del. Aug. 8, 2017) (dismissing a claim based on alleged violations of § 482.24(c) because it was legally "frivolous").

v.      There is No Support for Mitchell's § 1983 Claim Based on the Sixth Amendment.

55.     The Sixth Amendment right to counsel provides that once the adversary judicial process has been initiated, a defendant has the right to have counsel present at all "critical" stages of the criminal proceedings. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). The adversary process begins at arraignment or indictment. *Henderson v. Quarterman*, 460 F.3d 654, 661 (5th Cir. 2006).

56.     In *Sullivan v. County of Hunt, Texas*, the Fifth Circuit considered whether failure to inform a detainee of their right to counsel under Texas Health and Safety Code § 573.025(b)(1) violated the Sixth Amendment.  106 F. App'x 215, 220 (5th Cir. 2004).  The court held that it did not because the Sixth Amendment's right to counsel does not arise until a complainant is charged "with a criminal offense by the state." *Id.*

57.     Mitchell never alleges that she was charged with a criminal offense.  Therefore, she cannot state a § 1983 claim for infringement of her Sixth Amendment right to counsel.

vi.     No Facts Support a § 1983 Conspiracy Claim.

58.     To establish a conspiracy claim under § 1983, a plaintiff has to show an actual violation of § 1983 and the defendants' agreement to commit an illegal act.  *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995), *abrogated on other grounds by Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472–73 (U.S. 2015). "Mere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim of federal conspiracy under 42 U.S.C.A. § 1983." *Leggett v. Williams*, 277 F. App'x 498, 501 (5th Cir. 2008) (citation omitted).

59.     Mitchell makes passing references to a "criminal conspiracy," the contours of which are never made clear.  *See, e.g.*, ¶¶ 68–70.  Her allegations of a conspiracy or scheme are entirely nonspecific and conclusory, and therefore do not state a claim cognizable under § 1983.

**E.     Mitchell Fails to State an ADA Discrimination Claim (12(b)(6)).**

60.     Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

61.     Similarly, § 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a).

62.     To succeed on a claim under either statute, a plaintiff must show that (1) she has a qualifying disability; (2) she has been denied the benefits of services, programs, or activities for which the public entity is responsible, or was otherwise discriminated against by the public entity; and (3) she was discriminated against by reason of her disability. *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

63.     The gravamen of Mitchell's ADA/Rehabilitation Act claim is that the police failed to remove her handcuffs.  Complaint at ¶ 57.  As discussed above, Harris Health did not handcuff Mitchell or otherwise force her to remain in handcuffs.  Mitchell therefore cannot state an ADA/Rehab Act claims against Harris Health on that basis.

64.     Mitchell also states that Harris Health failed to accommodate her "arthritis, long term nerve and muscle damage, and broken bones in her hand."  Complaint at ¶ 78.  The Complaint is silent regarding what accommodation should have been made.  If this failure to accommodate concerns handcuffing, it fails for the reasons discussed above.  Regardless, Mitchell fails to plead that Harris Health denied her services. The Complaint states that she was taken to the BTEC, and that "it did not take long for the physician and BTEC medical personal [sic] to determine [Mitchell] did not meet the criteria for commitment, and she was released." Complaint at ¶ 83.  Nothing in the Complaint states that she was unable to obtain the emergency medical services provided in the BTEC.

65.     Further, Mitchell fails to allege that Harris Health discriminated against her due to any disability she may have.  She discusses her disabilities in detail, but never actually pleads that Harris Health denied any service *because of* her disability.  For these reasons, she cannot state a claim for violations of the ADA or Rehabilitation Act.

17

**F.      Mitchell Cannot State a Claim Related to Her "Illegal Bill."**

66.      Mitchell argues that the medical bill she received from Harris Health violated her medical privacy, citing HIPAA as well as Chapters 181, 571, and 611 of the Health and Safety Code.  However, Mitchell cannot state a claim on any of these statutory grounds.

67.      First, HIPAA does not create a private right of action.  *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006).  Even if it did, applicable regulations expressly allow "covered entities," like Harris Health, to disclose protected health information (PHI) to another covered entity "for the payment activities of the entity that receives the information."   45 C.F.R. § 164.506(c)(3).  In short, Harris Health can disclose Mitchell's PHI to her insurer, CHC, in order to ensure Harris Health gets paid for the services that it provided.  *See id.*  The conduct Mitchell says is "illegal" is not illegal.

68.      Second, § 571.018 is irrelevant to this case.  That section describes who is responsible for paying certain costs in connection with a "hearing or proceeding" under the Mental Health Code.   TEX. HEALTH & SAFETY CODE § 571.018(c) (mentioning costs for attorney's and prosecutor's fees, among others).  Mitchell never pleads that she was subject to a hearing or proceeding.  Rather, she asserts she was sent for a medical evaluation to the BTEC by a peace officer and then released.  Section 571.018 simply does not apply to this case.

69.      Third, Chapter 181 is not enforceable through a private right of action.  *See* TEX. HEALTH & SAFETY CODE § 181.201; *Carpenter v. Arredondo*, 714 F. App'x 416, 417 (5th Cir. 2018); *Sorrow*, 2016 WL 4445037, at *3.

70.      Fourth, like HIPAA, Chapter 611 allows for the disclosure of personal information "to individuals, corporations, or governmental agencies involved in paying or

collecting fees for mental or emotional health services provided by a professional." TEX. HEALTH & SAFETY CODE 611.004(6).

71.     Therefore, Mitchell cannot state a claim for the illegal bill or any sharing of medical information associated with it.

### G.    No Patient Transport Violation Occurred.

72.     Mitchell suggests that the fact that HPD transported her from the Harris Center to the BTEC may have violated EMTALA[10] or given rise to a claim under Texas Health & Safety Code § 241.056.  Complaint at ¶ 68, n.42.  However, she cannot state either claim against Harris Health.

73.     First, she never pleads that Harris Health transported or transferred her.  Second, she pleads only that she was evaluated at the BTEC, refused medical testing, and was later released.  In other words, she received the screening examination that EMTALA requires.  42 U.S.C. §§ 1395dd(a) & (b) (requiring hospital to conduct screening examination, though not if patient refuses care).  She simply fails to plead that Harris Health did anything inconsistent with its obligations under EMTALA.  Third, and as discussed above, no immunity is not waived for her § 241.056 claim. Thus, any EMTALA or § 241.056 claims against Harris Health must be dismissed.

### H.    Mitchell Has Not Obtained Leave of Court.

74.     Finally, the Complaint is procedurally improper.  Rule 15 states that a party can amend its complaint as a matter of course (i) within 21 days of serving it; or (ii) within 21 days of service of a responsive pleading (such as an answer) or a motion under Rule 12(b), (e), or (f). FED. R. CIV. P. 15(a)(1).  Otherwise, amendment requires the consent of the opposing parties or leave of court.  *Id.* 15(2).

---

[10] The Emergency Medical Treatment and Labor Act, 42 U.S.C. § 1395dd.

75.     Mitchell filed the Complaint several months past the deadline in Rule 15(a)(1) without obtaining leave of court.  She also did not obtain consent from Harris Health before filing.  Therefore, the Complaint is procedurally improper.

## VI. CONCLUSION

76.     The Complaint should be dismissed.  Mitchell has failed to properly serve Harris Health.  To the extent that her claims could conceivable have merit, Mitchell fails to plead facts to support them.  Therefore, Harris Health respectfully requests that the court grant the Motion.

Date: January 4, 2021

Respectfully submitted,

HARRIS COUNTY ATTORNEY

By: */s/ Michael D. Fritz*
Michael D. Fritz
Assistant County Attorney
Texas Bar No. 24083029
S.D. Tex ID No. 2440934
*Michael.Fritz@harrishealth.org*
4800 Fournace Place
Sixth Floor, East Wing
Houston, Texas 77401
(346) 426-0326 (telephone)
(713) 566-6558 (facsimile)

*Attorney-in-Charge for Defendant*
*Harris County Hospital District a/k/a Harris*
*Health System*

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2021, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.

*/s/ Michael D. Fritz*
Michael D. Fritz